# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,                    :        *United States District Court Judge*
                                                      *Katharine S. Hayden*
      Plaintiff,                        :        *Criminal No.: 06-00880-001*

      -vs-                              :

DAVID GROBER,                                :

      Defendant.                        :

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR THE COURT'S CONSIDERATION OF SENTENCE PURSUANT TO 18 U.S.C. SECTION 3553 (a) AND IN FURTHER SUPPORT OF APPLICATIONS FOR DOWNWARD DEPARTURE

---

**BRIAN J. NEARY, ESQ.**
**LAW OFFICES OF BRIAN J. NEARY**
21 Main Court Plaza South
Hackensack, New Jersey 07601
(201) 488-0240
Co-Counsel for the Defendant
David Grober

**PETER W. TILL, ESQ.**
**LAW OFFICES OF PETER W. TILL**
105 Morris Avenue, Suite 201
Springfield, New Jersey 07081
(973)258-0064
Co-Counsel for the Defendant,
David Grober

# TABLE OF CONTENTS

**Page**

**Table of Citations**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

**Introduction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

**Who is David Grober?  Today?  Tomorrow?**. . . . . . . . . . . . . . . . . . . .   12

   1.  **The nature and circumstances of the Offense and the History and Characteristics of the offender.**

       (a) **Nature and Circumstances of Offense**. . . . . . . . . . . . . .   15

       (b) **History and Characteristics of Defendant David Grober** .   17

   2.  **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

   3.  **The Kinds of Sentences Available**. . . . . . . . . . . . . . . . . . . . . . . .   21

   4.  **The Sentencing Range Established by the Sentencing Commission** 21

   5.  **The Need to Avoid Unwarranted Disparities**. . . . . . . . . . . . . . .   21

**David Grober's Response to the Presentence Report (Introduction)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**David Grober's Version**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**Acceptance of Responsibility**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**Base Offense Level Calculations**. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

**Departure on the Basis of Collateral Consequences**. . . . . . . . . . . . . . .   42

# TABLE OF CONTENTS
## (Continued)

**Page**

**_LEGAL ARGUMENT_**

### POINT I

**THIS COURT HAS THE AUTHORITY TO DEPART
DOWNWARD ESPECIALLY IN THE INSTANCE WHERE
THERE EXISTS A MITIGATING CIRCUMSTANCE OF
A KIND OR TO A DEGREE NOT ADEQUATELY TAKEN
INTO CONSIDERATION BY THE SENTENCING COMMISSION**

    A.  The Court's Sentencing Authority. . . . . . . . . . . . . .   43
    B.  Authority of the District Court to Depart Downward. .   44

### POINT II

**DAVID GROBER IS ENTITLED TO DOWNWARD
DEPARTURE BASED ON EXTRAORDINARY POST-OFFENSE
REHABILITATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   52

### POINT III

**DAVID GROBER IS ENTITLED TO DOWNWARD
DEPARTURE ON THE BASIS OF CHARACTER**. . . . . . . . . . . .   55

### POINT IV

**DAVID GROBER, IS ENTITLED TO DOWNWARD
DEPARTURE ON THE BASIS THAT THE CRIME ALLEGED
CONSTITUTES ABERRANT BEHAVIOR**. . . . . . . . . . . . . . . .   57

### POINT V

**DAVID GROBER IS ENTITLED TO DOWNWARD
DEPARTURE BASED ON SUBSTANTIAL FAMILY
TIES AND RESPONSIBILITIES PURSUANT TO
U.S.S.G. SECTION 5H1.6**. . . . . . . . . . . . . . . . . . . . . . . . .   59

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   67

## TABLE OF CITATIONS

**Cases**                                                          **Page**

Apprendi v. New Jersey, 530 U.S. 466 (2000). . . . . . . . . . . . . . . .    4

Barsky v. Bd. of Regents, 347 U.S. 442, 447 (1954). . . . . . . . . . . .    40

Blakely v. Washington, 124 S. Ct. 2531 (2004). . . . . . . . . . . . . . .    4, 17

Burns v. United States, 111 S. Ct. 2182 (1990). . . . . . . . . . . . . . .    20

United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1999). . . . . . . .    63

United States v. Baum, 974 F.2d 496 (4th Cir. 1992). . . . . . . . . . . .    39

United States v. Bergman, 416 F.Supp. 496, 503 (S.D.N.Y. 1976). . .    65

United States v. Bierley, 922 F.2d 1061, 1068 (3d Cir. 1990). . . . . . .    48

United States v. Brach, 942 F.2d 141 (2d Cir. 1991). . . . . . . . . . . .    39

United States v. Booker, 125 S.Ct. 738 (2005). . . . . . . . . . . . . . . .    4, 5, 6, 19,
                                                                                 41, 67

United States v. Brock, 108 F.3d 31 (4th Cir. 1997). . . . . . . . . . . .    50

United States v. Carey, 895 F.2d (7th Cir. 1990). . . . . . . . . . . . . .    56

United States v. Collins, 915 F.2d 619, 621 (11th 1990). . . . . . . . . .    54

United States v. Concepcion, 795 F.Supp. 1262 (E.D.N.Y. 1992). . . .    43, 44

United States v. Core, 125 F.3d 73 (2d Cir. 1997). . . . . . . . . . . . . .    50

United States v. Crosby, 2005 WL 240916 (2nd Cir. Feb 2, 2005). . . .    8, 67

U.S. v. Dominguez, 296 F.3d 192, 195 (2002). . . . . . . . . . . . . . . .    57, 58, 60
                                                                                 61, 62, 64

United States v. Fanfan, 125 S.Ct. (2005). . . . . . . . . . . . . . . . . . .    41

U.S. v. Gaskill, 991 F.2d 82, 84 (1993). . . . . . . . . . . . . . . . . . . . .    57, 58, 59
                                                                                 60, 61, 64

United States v. Guglielmi, 929 F.2d 1001 (4th Cir. 1991). . . . . . . . .    18

United States v. Haversat, 22 F.3d 790, 797-98 (8th Cir. 1994). . . . .    63

U.S. v. Headley, 923 F.2d 1079, 1082 (1991). . . . . . . . . . . . . . . . .   58

United States v. Ingram, 520 F.2d 602, 603 (4th Cir. 1976). . . . . . . .   19

United States v. Johnson, 941 F2d. 1102 (10th Cir. 1991). . . . . . . . .   39

United States v. Kapitzke, 130 F.3d 820(8th Cir. 1997). . . . . . . . . . .   50

United States v. Koon, 518 U.S. 81 (1996). . . . . . . . . . . . . . . . . .   40, 42, 59
                                                                               61

United States v. Kopp, 951 F.2d 521 (3d Cir. 1991). . . . . . . . . . . . .   39

United States v. Lara, 905 F.2d 599, 604 (2d Cir. 1990). . . . . . . . . .   48

United States v. Leiberman, 971 F.2d 981, 999, n.10 (3d Cir. 1992). .   59

United States v. Merritt, 988 F.2d 1298 (2d Cir. 1993). . . . . . . . . . .   48, 53

United States v. Ritchey, 949 F.2d 61 (2d Cir. 1991). . . . . . . . . . . .   56

United States v. Rothberg, 954 F.2d 217 (4th Cir. 1992). . . . . . . . . .   39

United States v. Sally, 116 F.3d 76, 79 (3d Cir. 1997). . . . . . . . . . .   50

United States v. Sclamo, 997, F.2d 970, 972-74 (1st Cir. 1993). . . . .   63

United States v. Sweeting, 213 F.3d 95 (3d Cir. 2000),. . . . . . . . . . .   60, 61, 62

United States v. Takai, 941 F.2d 738 (9th Cir. 1991). . . . . . . . . . . .   55, 56

United States v. Taylor, 843 F.Supp. 38, 43 (D. Ct. Pa. 1993). . . . . .   48

United States v. Wilson, 2005 WL 78522 at *1
(D. Utah Jan. 13, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

## INTRODUCTION

Through counsel, the Defendant David Grober files the following Memorandum in support of Sentencing setting forth all factors which the Court ought properly consider in determining what type and length of sentence is sufficient at the time of sentencing on May 12, 2008, but no greater than necessary, to comply with the statutory directions set forth in 18 U.S.C. § 3553(a).

On June 24, 2004 the United States Supreme Court in Blakely v. Washington, 124 S. Ct. 2531 (2004) reaffirmed the constitutional mandate first announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 124 S. Ct. at 2537 (quoting Apprendi, 530 U.S. at 490).

On January 12, 2005, the United States Supreme Court ruled that its Sixth Amendment holding in Blakely applies to the federal Sentencing Guidelines. United States v. Booker, 125 S.Ct. 738 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the federal Sentencing Guidelines" in the cases before the Court. Accordingly, reaffirming its holding in Apprendi, the Court concluded that:

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

6

Based on this conclusion, the Court further found those provisions of the federal

Sentencing Reform Act of 1984 that make the Sentencing Guidelines mandatory, 18

U.S.C. § 3553(b)(1) (Supp. 2004), or which rely upon the Guideline's mandatory nature

18 U.S.C. § 3742(e) (main ed. and Supp. 2004), incompatible with its Sixth Amendment

holding.    Booker, 2005 WL 50108 at *16 (125 S.Ct. 738 (2005)).  Accordingly, the

Court severed and excised those provisions, "mak[ing] the Guidelines effectively

advisory."  Id.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act

as revised by Booker,

> requires a sentencing court to consider Guidelines ranges, see
> 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court
> to tailor the sentence in light of other statutory concerns as
> well, see § 3553(a).

Booker, 2005 WL 50108 at *16.  Thus, under Booker, sentencing courts must treat the

Sentencing Guidelines as just one of a number of sentencing factors set forth in 18

U.S.C. § 3553(a).

The primary direction in Section 3553(a)(2) states that such purposes are:

> (A)  to reflect the seriousness of the offense, to promote respect for the
>       law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence to criminal conduct;
> (C)  to protect the public form further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational
>       training, medical care, or other correctional treatment in the most
>       effective manner.

Section 3553(a) further directs sentencing courts to consider (1) the nature and

circumstances of the offense and the history and characteristics of the defendant; (3)

the kinds of sentences available; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the Sentencing Guidelines, and, as one court suggested, "only depart...in unusual cases for clearly identified and persuasive reasons." United States v. Wilson, 2005 WL 78552, at *1 (D. Utah Jan. 13, 2005). The approach espoused in Wilson is consistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore.

For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the Sentencing Guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic record, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The Sentencing Guidelines' prohibition against considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases

8

in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.

Further, § 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the Guidelines, which in most cases offer only prison. See U.S.S.G. § 5C1.1 (describing circumstances in which court can impose sentence other than imprisonment). In some cases, a defendant's educational; treatment or medical needs may be better served by a sentence which permits the offender to remain in the community. There should be no doubt that the Defendant David Grober has directly demonstrated through his own personal responsibility in conjunction with the three mental health experts that the best result would be for him to be allowed to remain in the community and simultaneously engaged in intense therapy.

Although not applicable here, finally § 3553(a)(7) directs courts to consider "the need to provide restitution to any victims of the offense." In many cases, imposing a non-custodial sentence or only a short period of imprisonment will best accomplish this goal by allowing the defendant to work and pay back the victim. The Sentencing Guidelines do not account for this arrangement. In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the Sentencing Guidelines. And where the Sentencing Guidelines conflict with other factors set forth in § 3553(a), the court will have to resolve the conflicts.

9

One of the more prominently cited decisions is <u>United States v. Crosby</u>, 2005 WL 240916 (2nd Cir. Feb. 2, 2005), where the United States Court of Appeals for the Second Circuit reflected on <u>Booker</u> saying that the District Court ought properly proceed with an initial determination of the Sentencing Guidelines range, with respect to its consideration of the basis for departures and then proceed with the other factors set forth in Section 3553(a) – such as the need for deterrence, punishment and protect the public.

The United States Court of Appeals for the Second Circuit in <u>Crosby</u> acknowledged the discretion in the hands of the District Court. Absent from the <u>Crosby</u> decision was any specific direction to the District Court of a specific formula for the discharge of the District Court's obligations.

Under the Sentencing Guidelines the traditional sentencing factors were not to be considered but have now taken on added significance. Most common of these factors are the Defendant's age, the motive for committing the offense, the fact that persons benefited from his conduct in a very real and important way and his character generally. It is significant that the District Court may now determine for itself the underpinning for any sentencing enhancement. The District Court may otherwise conclude that the enhancement of Sentence is an inappropriate predictor of the Defendant's chances of recidivism, thereby demonstrating the difference between this Defendant from others who may have committed similar conduct.

It is clear that the restraints of the Sentencing Guidelines have been relieved and that the District Court may appropriately fix an appropriate sentence.

As has now been offered by others recently, the District Court is now permitted to proceed with a sentencing of the Defendant, and not just his conduct.  All that having been said, it is respectfully suggested that the Defendant David Grober ought be reasonably evaluated and thereafter released to a probationary status, under the circumstances.

### *Who Is David Grober?  Today?  Tomorrow?*

It is undisputed that the shock and total humiliation experienced by the

Defendant David Grober, in the aftermath of his arrest in December 2005, has certainly

forced him to proceed with soul-searching and very definitely introspection.  He has had

no choice but to get to the bottom of and at the source of what led him to his darkest

hour.

For someone with no previous experience with the law, an arrest for possession

and distribution of child pornography and into custody at the Passaic County Jail was to

say the very least one indescribable wake-up call.  And, if that weren't enough, the bail

conditions added a further level of horror.  The Defendant David Grober was prohibited

from returning home.  Consequently, it was impossible for there to be any opportunity

to comfort his wife and children.  It was indescribable as to how inconsolable they

were.  This all came as quite a shock and up until that time, the Grober family existence

was predictable.  However, it was nearly impossible for them to understand why the

Defendant, David Grober was prohibited from the family home.  But only until DYFS

finished their investigation and reported those findings to the Court, that was how life

was going to be.  The Defendant David Grober had to take up residence at a local

motel, a few miles from home – but emotionally and certainly physically it might as well

have been halfway across the country.

Each day certainly seemed longer than the next as the Defendant David Grober

waited on "pins and needles" for relief and release from the Court that never seemed to

come.  The hope was that after a close examination of the record, the Court would be

able to clearly see that the Defendant David Grober had always been a loving husband and devoted father and had never ever been a threat to his children or put anyone in jeopardy ever.

The weight of the world was on the Defendant David Grober's shoulders, with overwhelming guilt and shame. Out of all of this, commitment was made that always would the welfare of the family be placed ahead all else.

A few torturous days soon turned into a week. On Thursday, December 14, 2005 the climate elevated further as literally all hell broke loose when the very local weekly shopper newspaper ran a four-paragraph story, reporting the facts of the Defendant, David Grober's arrest. Ultimately, it was nearly another whole week until the judge was satisfied that the Defendant David Grober posed no threat to his wife or children whereupon the bail conditions were amended – just in time for the holidays.

The Defendant David Grober was extremely grateful for this positive turn of events and most certainly vowed to do the utmost to come to terms with and rationally understand the events leading up to the arrest.

Faced with as serious a crime as one could possibly imagine the Defendant David Grober had no choice but to immerse himself in reading any and all information on the subject. He read everything available which. Everything read included strong warnings from law enforcement about the unlimited availability of this material all over the internet.

Simply put, the act of merely clicking on and viewing an image was in and of itself a crime – all of which happened to the Defendant David Grober in an instant.

13

What he had apparently never realized before was the simple realization that each picture was actually a record of a crime.

By clicking on he was not only viewing a crime scene photo, but by doing so was further advancing that abuse yet again by enabling yet another set of eyes to witness what in many cases were horrendous unspeakable acts that no child should ever be subjected.

In an attempt to try to accurately convey his state of mind at the time, it is apparent that the images never equated in his mind as being real children – with real feelings.  In fact, it is now clear that there was something unreal about the whole thing. There was a disconnect because of the failure (unintended) to comprehend that the pictures were of real children with real feelings.  The Defendant David Grober can only now express absolute sorrow for the children being photographed – perhaps being forced to do so by their very own parents.

The Defendant David Grober never stops considering that sobering realization, which is in itself somewhat perplexing because of two children of his own.  And while there is no doubt that the Defendant David Grober is a devoted, extremely concerned and by some accounts an "overly-protective" parent, he is then unable to even remotely conjure the thought of that witnessed in the photographs.  Why didn't it occur to him that this was something so horrendous that he clearly should have had better judgment.

The Defendant David Grober has gone to great lengths to instill core values and integrity in his children.  It is now clear that he would never do anything to his or any

14

other child for that matter. But the reality is that for an instant moment in time it did not resonate that the children in the subject pictures had families and lives as well. And how could there have been this disconnect from the kind of socially appropriate behavior?

There remains a rather sobering reality for the Defendant David Grober to accept and process all of this. But be assured professionals (only after long efforts made) say there is no chance for there to be a reoccurrence.

In the present case, Mr. Grober respectfully submits the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purpose of sentencing:

**1.    The nature and circumstances of the Offense and the History and Characteristics of the Offender**

**(a)    Nature and Circumstances of Offense**

The Defendant David Grober is facing a possible incarcerative stay when the circumstances clearly dictate that such a conclusion is not justified on any number of accounts. We respectfully suggest that the deterrent effect of a probationary sentence (now referred to as Supervised Release) in substantial part, will have achieved the goals of justice and will not dilute this Court's objective in sentencing the Defendant David Grober. Indeed, the request for relief vindicates the societal interests in deterrence, yet takes into account Defendant David Grober's personal circumstances, including his age, health, family situation, and the possible judicial denunciation he has yet to receive. In

15

view of these factors, a prison term of any length for the crime for which he stands convicted is appropriate.[1]

We are not unmindful that several years have elapsed since the initial circumstances which led to the Defendant David Grober's immediate acknowledgement of wrongdoing to detectives of the Passaic County Sheriff's Department. However, it is submitted that now with the passage of time, there seems to be a sentiment that these circumstances are inexplicably somehow working against all of the good deeds of the Defendant David Grober.

The Defendant David Grober has forcefully expressed his remorse, fully acknowledged and taken responsibility for his wrongs in connection with this matter.

However, there has been no enlightenment with respect to the Defendant David Grober's posture of cooperation with the very onset of this matter. The record now before the District Court, notorious by its absence failed to specifically articulate as a basis for the imposition of any sentence any of the details of what proceeded very early on in the investigative stages of this matter.

Accordingly, it is respectfully submitted that at the time of sentencing, the harsh reality of any incarcerative sentence on the Defendant David Grober must be adequately explained to the Court, even in light of the admitted misdeeds. We are convinced that a full description of the wide-ranging implications of any

---

[1] See Transcript of Proceedings Arraignment/Plea dated October 4, 2007.

16

incarcerative punishment ought properly move this Court to ameliorate the sentence to that of probation/home detention without diluting the public impact.

In further support there is offered reports/testimony of three separate mental health professionals providing unvarnished and introspective views of the Defendant David Grober addressing past, present and likely future behaviors.

**(b)  History and Characteristics of Defendant David Grober.**

*Further details of Mr. Grober's personal life and charitable efforts will be further set forth at the time of oral argument at sentencing proceedings.*

**2.      The Need for the Sentence Imposed to Promote Certain Statutory Objectives.**

If Defendant David Grober's sentence is declared to be a sentence of probation, then certainly the goals of sentence and the public impact of sentence would be met.

However, the Court must properly weigh the personal, individual circumstances against the need to enforcement the law and against the fact that there is community and nation of laws.  In other words, that there is a community that needs to be served by the enforcement of the law.  Although the Court has not yet spoken, specifically, we understand that this Court stands understandably concerned with the proper balance between Defendant David Grober's individual needs and society's interests in preventing crime.  We acknowledge that deterrence is one of the traditionally – accepted objects of sentencing.  We respectfully suggest that deterrence has two aspects: general and specific deterrence.  General

17

deterrence warns others that if they break the law, punishment will follow. It provides a vivid example of what happens to those who commit crimes. On the other hand, specific deterrence is intended to inhibit the individual from again engaging in criminal acts. Absolutely no one has suggested that the imprisonment of the Defendant David Grober is necessary in order to discourage him from committing crimes. Nor has anyone suggested that the Defendant David Grober constitutes a present threat to society.

Indeed, the Defendant David Grober's possible sentence of incarceration (See footnote #1) has already served in substantial measure its desired general deterrent effect.   Again, the spectacle and the circumstances surrounding Mr. Grober's voluntary surrendering have already been chronicled.  The message to the Defendant David Grober has been very clear that punishment may be imposed and the response from the Defendant David Grober is that he unequivocally accepts responsibility and fully understands.  This was never more evident that the entry of a guilty plea to the Superseding Indictment.

Moreover, the Defendant David Grober's conviction will have other collateral consequences including but not limited to the financial responsibilities to his entire family.[2]  It is clear that there is a very real potential for him to be terminated from his present employment.  It is the sheer magnitude of back breaking solicitation of sales from day to day that is a great example of the Defendant David Grober's work ethnic, rather than the obvious trading on the personal and professional

---

[2] Mr. Grober's sister-in-law is severely afflicted.  Mr. Grober's responsibilities for her care will be further outlined at the time of sentencing.

relationships established over many, many years.  In a world that very often views friends to the community with unhealthy adoration, leaving an impression of a sense of entitlement and the ability to do anything desired, the Defendant David Grober continues to stand apart from the rest.  The Defendant David Grober is one of the finest examples of the very small fraternity of persons in the community who have reached out and on behalf of so many and yet have never stopped giving back to the community.

It is anticipated that the Government will argue that Defendant David Grober's downfall is a direct consequence of his crimes; that he brought on himself.  But at some point, "mercy must temper justice", and we as a society must say "enough is enough."

Since Blakely many District Courts are proceeding with reviews of sentences wherein they are attempting to reasonably conclude that sentences meet society's legitimate goal of deterrence and that such goal has been adequately served.  It is respectfully submitted that under the circumstances the Defendant David Grober's sentence ought dramatically be adjusted in light of the already difficult circumstances and the unanimous support of his friends and family and should otherwise be directed to complete his sentence through service to the public.

It can reasonably be assumed, that this Court is cognizant of the interests of law enforcement and the community which most certainly outweighed the Defendant David Grober's individual problems.

We respectfully suggest that the legitimate goal of deterrence has been fulfilled. A loud and clear message has been sent. The Defendant David Grober has suffered unprecedented denunciation and humiliation. At this point the Defendant David Grober can only ask that the Court apply to his tragic plight a reasonable and justified measure of compassion and mercy so that he may claim some hope of a future life. The Defendant David Grober does not ask for immediate relief – only that his sentence be that of probation thereby allowing the intense mental health processes to continue unabated in connection with his continued care of his family.

We understand that the Court is concerned with justice; however, justice is most humane when tempered with mercy. The law is respected not when it acts unyielding; but when it acts with a generous spirit. That generous spirit of the law should seek to utilize the Defendant David Grober's abilities for the benefit of society.   We submit that during what should be productive years in the middle of his life the Defendant David Grober ought properly be afforded the opportunity to again made a positive contribution to society.

In United States v. Guglielmi, 929 F.2d 1001 (4th Cir. 1991), the Fourth Circuit stated that while the nature and the gravity of the offense lay on one side of the discretionary scale, the defendant's character must be placed on the other side of the scale. Deterrence alone cannot be a substitute for considering the factors pertinent to the discretionary evaluation of the individual. Id. At 1006. Indeed, a rigid sentencing policy based solely on the crime for which the defendant is

20

convicted is under no reasonable conception an exercise of judicial discretion. United States v. Ingram, 520 F.2d 602, 603 (4th Cir. 1976).

Here the Court's sentencing of a defendant to probation will have served the legitimate purpose of general deterrence. The Defendant David Grober has suffered greatly from the consequences of the acts for which he stands convicted. While it may be argued that his suffering is a direct consequence of those acts, in a very real and much larger sense, society has exacted an appropriate penalty, and it is therefore appropriate to temper justice with mercy.

## 3. The Kinds of Sentences Available

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 2005 WL 50108 at *16. This renders the sentencing guidelines advisory. Id. Cite to 18 U.S.C. §§ 3551, 3559, 3561, 3571, 3851 for the types of available sentences based upon defendant's conviction.

## 4. The Sentencing Range Established by the Sentencing Commission

The Defendant acknowledges the Presentence Report and its reference to the Guideline range but for the reasons stated heretofore, it does not adequately reflect the Defendant's conduct.

## 5. The Need to Avoid Unwarranted Disparities

**To be addressed at the time of oral argument due to the recent and constant changes in the decisional law.**

### David Grober's Response to the Presentence Report

## Introduction

With respect to the issue of Sentencing as presented by the Presentence Report filed by the United States Probation Office with respect to the Defendant David Grober, the following constitute the specific objections to the Presentence Report and its elements, as well as issues concerning the Sentencing Guidelines and their application in the instant case, and challenges to the existing Sentencing Guidelines.

As there has been no indication or notice of the possibility of an upward departure, Burns v. United States, 111 S. Ct. 2182 (1990), we will not address that loathsome possibility. In the event that an upward departure is being considered, then it is respectfully requested that such possibility be addressed in a separate conference in advance of disposition. We note that the United States Probation Office did not indicate any potential for upward departure or unlimited sentencing. (see footnote #1)

Mr. Grober initially appeared before the Court (Honorable Madeline Cox-Arleo) on March 7, 2006 and thereafter released on a $100,000 unsecured appearance bond co-signed by his wife, Eleanor Grober.  The Defendant was placed under Pretrial supervision with the following conditions:  Eleanor Grober to serve as a third party custodian; travel restricted to Connecticut, New Jersey and New York; limited computer and Internet access to be monitored by computer software; mental health treatment continued as deemed appropriate by Pretrial Services; no contact with children under the age of 18, except for his own children; and surrender passport and/or travel documents.

22

Sentencing is now scheduled to proceed before the Honorable Katharine S. Hayden, United States District Judge for the District Court of New Jersey, Newark, New Jersey on Monday, May 12, 2008.

The Presentence Report contemplates a total Adjusted Offense Level of 40.

It is respectfully requested that the Court depart downward from this offense level. Specifically, it is requested that the Court depart downward, thereby allowing Mr. Grober to receive a sentence to no more than home confinement in order to continue gainful employment, to continue with post offense rehabilitation and to continue with community service.

It is most respectfully offered that the proposed sentence above is fair and serves the interests of justice.

Specific Responses to the Presentence Investigation Report.

### PART A THE OFFENSE

## PIR, paragraph 1, page 3:

Paragraph 1 fails to set forth the charging history and is therefore otherwise misleading. Set forth below is a completely chronology, as follows:

**December 7, 2005** – Initial arrest by State of New Jersey authorities (Passaic County Sheriff's Department) for alleged State of New Jersey violations of law.

1. Possession of images and videos of child pornography, in violation of N.J.S. 2c:24-4(5)(b).
2. Distribute images and videos of child pornography in violation of N.J.S. 2c:24-4(5)(a).

**December ___, 2005** – Appearance before Court Passaic County.

**February 8, 2006** – Correspondence from U.S. Customs and Border Protection, pursuant to the Civil Asset Forfeiture Reform Act/Notice of Seizure of Property, Seizure (Case No. 2006-4601-000245-01 1M) re: 2 Hard Drive, 1 Maxter Hard

Drive, 1 Toshiba Hard Drive and 5 Media Storage-Re-Writeable Compact Disks (approx. valued at $500.00).

**February 22, 2006 (filed date)** – Summons, Passaic County Prosecutor's office, State of New Jersey v. Digital Tower S/N 475523Zpo; Sony Vaio Tower S/N 284711353001638; Sony Monitor SDM-271, S/N 4030 446 et al., Docket No. DC3511-06.

**March 2, 2006 (service date)** – State of New Jersey Forfeiture Complaint.

**March 7, 2006** – Initial Appearance before the Honorable Madeline Cox-Arleo, U.S. District Court.

**November 14, 2006** – Federal Indictment two counts.   Initial Appearance before Court.

**August 1, 2007** – Appearance before the Honorable Katherine Hayden (Scheduling Order).

**August 24, 2007** – Investigators (ICE) interview Defendant's wife whether images on computer are daughter (negative).

**August 25, 2007 (return August 30, 2007)** – Permission of Court granting Defendant leave to family vacation in Virginia Beach, Va. In advance of son's departure to college.

**SEPTEMBER 25, 2007** -   Agreement as to plea reached as one count of distribution and no restrictions/stipulations with respect to downward departures (as of 12 noon).

At 4:30 p.m. counsel on behalf of Government advises Defendant's counsel that the negotiated and agreed upon plea agreement withdrawn by Government.

**September 26, 2007** - Return of Superseding Indictment.

**October 4, 2007** - Arraignment/Entry of Plea.

| | |
|---|---|
| **PIR, Page 3, Paragraph 2** | No objection. |
| **PIR, Page 3, Paragraph 3** | No objection. |
| **PIR, Page 3, Paragraph 4** | No objection. |

**PIR, Page 3, Paragraph 5**                    No objection.

**PIR, Page 4, Paragraph 6**                    No objection.

**PIR, Page 4, Paragraph 7**                    No objection.

**PIR, Page 4, Paragraph 8**                    No objection.

**PIR, Page 4, Paragraph 9**                    No objection.

**PIR, Page 4, Paragraph 10**                   No objection.  Note: A Notice
                                                of Dismissal has never been
                                                entered with respect to State
                                                of New Jersey charges.

**PIR, Page 4, Paragraph 11**                   No objection.

**PIR, Page 4, Paragraph 12**                   No objection.

**PIR, Page 4, Paragraph 13**                   No objection EXCEPT as
                                                to reference "avoid all
                                                contact with an alleged
                                                victim of the crime and
                                                with a potential witness who
                                                may testify. . ."

                                                Said condition
                                                constitutes possibly
                                                standard condition
                                                of pretrial restriction
                                                and is otherwise
                                                inapplicable and in
                                                no way supports
                                                the existence in this
                                                case of any potential
                                                or otherwise threat
                                                to a victim or
                                                witness.

**PIR, Page 5, Paragraph 14**                   No objection.
                                                Defendant has and
                                                continues to wear

a monitoring device, permitting him to proceed with his work livelihood and full schedule of daily activities with a 10 p.m. curfew.

**PIR, Page 5, Paragraph 15**

Objection. As previously stated by the Defendant and corroborated by the Passaic County Sheriff's Office the discovery of the Defendant activity was by the Passaic County Sheriff's Department (Internet Crimes Unit) and otherwise coupled with information thereafter obtained from the Internet Service Provider (AOL).

**PIR, Page 5, Paragraph 16**

No objection.

**PIR, Page 5, Paragraph 17**

No objection, except to state in clear terms that the Defendant transmitted to an e-mail address apparently monitored by the Passaic County Sheriff's Department. The very next day the

Defendant's AOL account was permanently shutdown.

**PIR, Page 6, Paragraph 18**

Objection. The Passaic County Sheriff's Department was not literally informed as it was that law enforcement agency that maintained the subject e-mail account

where the Defendant sent information. The alleged participation of AOL was in a confirmatory role only and not in a discovery posture.

**PIR, Page 6, Paragraph 19**

No objection.

**PIR, Page 6, Paragraph 20**

No objection.

**PIR, Page 6, Paragraph 21**

No objection.

**PIR, Page 6, Paragraph 22**

No objection.

**PIR, Page 7, Paragraph 23**

No objection.

**PIR, Page 7, Paragraph 24**

Objection as to sentence #5 and #6. At this time there was no admission from the Defendant admitting to 200 images of child pornography or that the computer was used to access child pornography.

**PIR, Page 7, Paragraph 25**

Objection. Defendant has no knowledge with respect to this information and is therefore unable to

comment.

**PIR, Page 7, Paragraph 26**

Objection.
Defendant has no knowledge with respect to this information and is therefore unable to comment.

**PIR, Page 7, Paragraph 27**

Objection.
Defendant has been alleged by the Government and otherwise never available for confirmation to the Defendant via expert or otherwise investigative report. It is without dispute that the Government has selected images but has not disclosed whether among those images there are any otherwise exculpatory pieces of information/images.

**PIR, Page 8, Paragraph 28**

No objection.

**PIR, Page 8, Paragraph 29**

(a) No objection.

(b) No objection.

(c) No objection.

(d) No objection.

**PIR, Page 9, Paragraph 29**

(e) No objection.

(f) No objection.

|  |  |  |
|---|---|---|
|  | (g) | No objection. |
|  | (h) | No objection. |
| **PIR, Page 10, Paragraph 29** | (i) | No objection. |
|  | (j) | No objection. |
| **PIR, Page 10, Paragraph 30** |  | No objection. |
| **PIR, Page 10, Paragraph 31** |  | No objection. |
| **PIR, Page 10, Paragraph 32** |  | No objection. |

**PIR, Page 10, Paragraph 33**

Objection insofar as to the use of the characterization that the Defendants behavior "was determined to be ongoing or continuous" especially in light of the information presently before the Court that activity proceeded on July 9, 2005, July 27, 2005, August 16, 2005 (and possibly another date? Ask David.)

**PIR, Page 11, Paragraph 34**

No objection.

**PIR, Page 11, Paragraph 35**

Objection.
Not applicable.

**PIR, Page 11, Paragraph 36**

Objection.
Not applicable.

**PIR, Page 11, Paragraph 37**

No objection.

**PIR, Page 11, Paragraph 38**

No objection.
(600 images = 5 level enhancement.)

**PIR, Page 11, Paragraph 39**

Objection.   This paragraph is highly prejudicial and otherwise irresponsible as there is a complete failure to connect these matters to the Defendant.

**PIR, Page 12, Paragraph 40**

Objection.   This paragraph is highly prejudicial and otherwise irresponsible as there is a complete failure to connect these matters to the Defendant.

Further, the warehouse presentation of photographs is highly prejudicial to what is really the relevant charged conduct in this matter.

**PIR, Page 13, Paragraph 40**

Victim Impact Statement #1.

Victim Impact Statement #2.

**PIR, Page 14, Paragraph 40**

Mother of K.F..

**PIR, Page 15, Paragraph 40**

Stepfather of K.F..

**PIR, Page 16, Paragraph 41**

No objection.

**PIR, Page 16, Paragraph 42**

Objection.   The Defendant will submit statement of acceptance of responsibility and will under the circumstances seek a downward departure based upon super acceptance of responsibility.

**PIR, Page 16, Paragraph 43**

Objection. The Defendant is so entitled but particularly in light of the Government's unannounced Superseding of the Indictment after the Defendant's acceptance of the terms of a guilty plea, only to have the Government withdraw their offer after acceptance and suddenly produce a Superseding Indictment. The Government was the proximate cause of their purported extra work efforts.

**PIR, Page 16, Paragraph 44**

No objection.

**PIR, Page 16, Paragraph 45**

No objection.

**PIR, Page 16, Paragraph 46**

Objection.

**PIR, Page 17, Paragraph 47**

Objection.

**PIR, Page 17, Paragraph 48**

Objection.

**PIR, Page 17, Paragraph 49**

Objection.

**PIR, Page 17, Paragraph 50**

Objection.

**PIR, Page 17, Paragraph 51**

No objection.

**PIR, Page 17, Paragraph 52**

No objection.

**PIR, Page 17, Paragraph 53**

No objection.

**PIR, Page 17, Paragraph 54**

Objection.

**PIR, Page 17, Paragraph 55**

Objection.

**PIR, Page 17, Paragraph 56**

Objection.

**PIR, Page 17, Paragraph 57**

Objection.

**PIR, Page 17, Paragraph 58**

No objection.

**PIR, Page 17, Paragraph 59**

Objection.

**PIR, Page 17, Paragraph 60**

No objection.

**PIR, Page 18, Paragraph 61**

No objection.

**PIR, Page 18, Paragraph 62**

No objection.

**PIR, Page 18, Paragraph 63**

Objection. (Defendant a college student 30 years ago).

**PIR, Page 18, Paragraph 64**

No objection.

**PIR, Page 18, Paragraph 65**

No objection.

**PIR, Page 18, Paragraph 66**

No objection.

**PIR, Page 19, Paragraph 66**

No objection.

**PIR, Page 19, Paragraph 67**

No objection.

**PIR, Page 19, Paragraph 68**

No objection.

**PIR, Page 19, Paragraph 69**

No objection.

**PIR, Page 19, Paragraph 70**

No objection.

David Grober's mother was hospitalized in 2000 with a cardiac condition that arose primarily from her failure to seek out and follow previous medical advice for her cardiac condition. After admission, her paranoid behavior came to the attention of the hospital psychologist who thereafter approached the family and encouraged them to "sign her in" to the psychological unit for further evaluation. Mrs. Grober was adamant in her refusal to cooperate and successfully pleaded with her children to allow her to

return home, in exchange for which she promised to get treatment and deal with her problem.

David Grober and his sister Andrea Dovner reluctantly agreed only to find that instead of cooperating and seeking help, she became more difficult and continued to shop and hoard compulsively to the extent that her home virtually became uninhabitable. A second incident in April of 2004, requiring further hospitalization was the catalyst that prompted David and his sister Andrea to contact a social worker about the sheer magnitude of the problem.

When her home was subsequently visited by several other psychiatrists, including Dr. Deng, the Chief of the Geriatric Unit for Passaic County Social Services Department, it was widely acknowledged to have been one of the most extreme cases of mental illness and hoarding that they were aware of. All of the psychiatrists consulted recommended that Andrea and David institute a guardianship proceeding out of concern for her physical well-being and her continued refusal to get any professional help.

A guardianship application was made before the Superior Court of New Jersey whereupon Mrs. Grober engaged a prominent law firm to defend her interest. After years of being unsuccessful in getting her to address her problem,

and a mountain of evidence which clearly proved that Mrs. Grober was incapable of looking out for her own best interests, her two children ultimately withdrew their guardianship application under the judge's signature, provided that she agreed to get help for her problem.

Though she ultimately signed the agreement, none of the eight conditions were actually adhered to and she continued to shop compulsively until December 2005, at which point her health had deteriorated further, requiring permanent hospitalization and residence at a series of facilities, until her passing in August of 2007. After having already cared for his invalid father-in-law who passed away in 2001, Mr. Grober's emotional state continued to unravel with the decline of his mother and her mental illness and all of the collateral issues surrounding her mental illness.

Estimates are that Mrs. Grober spent more than $2M on merchandise which filled nearly every square inch of space in the home as well as filling up two 10x30 storage units that she rented at the Acess facility on Route 23 in Wayne. The massive pile of merchandise, refuse and debris, a modern-day equivalent of the Collier Brothers of the 1920's, has required tremendous attention and effort from the Defendant, who has thus far filled 13 30-yard dumpsters (rented from Gaeta

Carting & Refuse) with garbage. (See photographs).

In addition to the stress and strain caused by this situation, the Defendant nevertheless continued to operate and grow the Kosher food business he opened in May of 1991, while serving as a good husband and father, despite having to deal with all of the issue surrounding his mother and her illness.

**PIR, Page 19, Paragraph 71**

No objection.

**PIR, Page 20, Paragraph 71**

No objection.

**PIR, Page 20, Paragraph 71**

No objection.

The Defendant has always gone out of his way to help his family as evidenced by the additional responsibilities involved in taking in his father-in-law, George Meyerson, who had very grave medical issues and gradually lost all of his mobility and was confined to a wheelchair.

When the Grober's moved to their home in the Point View section of Wayne in June 1998, they made provisions for both Mr. Meyerson (who had already gone through all of his savings) and the Defendant's handicapped sister-in-law to come live with them. Prior to this both Mr. Meyerson and his younger daughter Audrey had lived together in a two-bedroom apartment in Hackensack. Mr. Meyerson's worsening health required full-time nursing assistance on a daily basis. When the aides often failed to arrive, they called

upon Eleanor and David to help with personal hygiene matters since Mr. Meyerson could not even transfer our of the wheelchair without assistance.

Rather than have to continue traveling to Hackensack to ensure George and Audrey's continued well-being, the defendant and his wife came up with the idea of allowing them to live with their family as a more practical solution.

The arrangement worked fairly we until Mr. Meyerson's health worsene unexpectantly and ultimately resulte in his passing in February of 2002 The net effect of his untimely deat placed additional emotional an financial burdens on the defendan and family.  Also looming on th defendant and family was the ment illness and resistance to care by th Defendant's mother.  In the face of a of this the Defendant and famil continued to make a life in a respects.

**PIR, Page 20, Paragraph 72**

No objection.

Both of the Defendant's children have excelled in school and have consistently been in the top tiers of their respective classes.    Mr. Grober's son Aaron gained an exceptional reputation while a student at Wayne Hills High School, graduating in the top 10% of his class and earning accolades as a Peer Leader and member of the national Honor Society Fencing Team.  He also was recognized as an AP Scholar and awarded

scholarship money by the Wayne Township PTO for his excellence and contributions to the school in several categories. He is now at Vassar College, where he had a 3.75 GPI after his first semester.

The Defendant's daughter Margaux is also at the top of her class, having made high honor roll consistently during the last two years while at Schuyler Colfax Middle School. She is scheduled to graduate on June 23, 2008.

**PIR, Page 20, Paragraph 73**

No objection.

**PIR, Page 20, Paragraph 74**

No objection.

With the death of her father, Mr. Grober's sister-in-law Audrey Meyerson has relied on the Defendant as both a brother and father figure. He regularly meets with her to assist with personal matters pertaining to her health, auto insurance, car problems, disability issues, etc. and to help improve her living arrangements, given her physical limitations to lift basic household objects.

**PIR, Page 20, Paragraph 75**

No objection.

**PIR, Page 20, Paragraph 75**

No objection.

**PIR, Page 21, Paragraph 76**

No objection.

**PIR, Page 21, Paragraph 77**

Objection. Although reluctant, there have been some friends who have regularly visited.

**PIR, Page 22, Paragraph 78**

No objection.

**PIR, Page 22, Paragraph 79**                  No objection.


**PIR, Page 22, Paragraph 80**                  No objection. Correction.
                                                Led by Martinez.

**PIR, Page 22, Paragraph 81**                  No objection.

**PIR, Page 22, Paragraph 82**                  No objection.

**PIR, Page 23, Paragraph 83**                  No objection.

**PIR, Page 23, Paragraph 84**                  Objection. Smoked
                                                marijuana as a college student.
                                                Upon entering work world that
                                                behavior was concluded.

**PIR, Page 23, Paragraph 85**                  No objection.

**PIR, Page 22, Paragraph 86**                  Objection. Correction.
                                                -   Since March of 2006 not
                                                    2007.
                                                -   C & M, South Hackensack, New
                                                    Jersey.
                                                -   constant    factory    contact
                                                    necessarily.
                                                -   majority of time on road seeing to
                                                    customers.


**PIR, Page 23, Paragraph 87**                  Objection. Correction.
                                                May 1991 – August 2005

**PIR, Page 23, Paragraph 88**                  No objection.

**PIR, Page 24, Paragraph 89**                  No objection.

**PIR, Page 25, Paragraph 89**                  No objection.

**PIR, Page 26, Paragraph 90**                  No objection.


**PIR, Page 26, Paragraph 91**                  No objection.

**PIR, Page 26, Paragraph 92**                    No objection.

**PIR, Page 26, Paragraph 93**                    Objection. If incarcerated
                                                   family will be without sufficient
                                                   funds to survive.

**PIR, Page 26, Paragraph 94**                    No objection.

**PIR, Page 26, Paragraph 95**                    Objection.

**PIR, Page 26, Paragraph 96**                    No objection.

**PIR, Page 27, Paragraph 97**                    No objection.

**PIR, Page 27, Paragraph 98**                    No objection.

**PIR, Page 27, Paragraph 99**                    No objection.

**PIR, Page 27, Paragraph 100**                   Objection.

**PIR, Page 27, Paragraph 101**                   Objection.

**PIR, Page 27, Paragraph 102**                   Objection.

**PIR, Page 27, Paragraph 103**                   No objection.

**PIR, Page 28, Paragraph 104**                   Objection.

**PIR, Page 28, Paragraph 105**                   Objection.

**PIR, Page 28, Paragraph 106**                   No objection.

**PIR, Page 28, Paragraph 107**                   Objection.

**DAVID GROBER'S VERSION (To be further supplemented by way of oral argument by counsel).**

It is fully acknowledged that his behavior is unacceptable and that Mr. Grober violated the law. He has, other than this event been an example of success through backbreaking hard work. It is of significance that many in the community share an opinion of the Defendant David Grober of a person and individual who places the interests of others first, followed by an impeccable personal and community reputation.

**ACCEPTANCE OF RESPONSIBILITY**

It seems clear that the Defendant David Grober has acted to accept responsibility. The Sentencing Guidelines require, by their terms, that he accept responsibility. The issue is whether or not there are exceptional circumstances justifying departure. It is left for this District Court to assess what constitutes that acceptance. Sentencing Guideline § 3E1.1 Application Notes No. 5.

The District Court can see the plea agreement as a "voluntary assistance to the authorities in the recovery of fruits and instrumentalities of the offense." Application Notes 1 (e).

While in most cases, a man takes responsibility for the consequences of his action, when it comes to the Sentencing Guidelines, nothing is as it appears. The Defendant David Grober is entitled to a three point reduction for acceptance of responsibility because he has come before this Court, of his own volition, and entered a guilty plea. This act shows an acceptance of responsibility.

**BASE OFFENSE LEVEL CALCULATIONS:**

In United States v. Brach, 942 F.2d 141 (2d Cir. 1991), the Court of Appeals ruled that the sentencing court's decision to value the victim loss (in that case) at the full amount of a bank loan was the proper evaluation even though the borrower had repaid part of the loan. The bank fraud count in Brach rested upon overstatement of Mr. Grober's net worth. The Second Circuit upheld this determination on the basis of 2F1.1's commentary permitting a loss calculation based upon the intended loss and 2B1.1's valuation of loss as the value of the property taken by fraud. This posture has also been accepted by the 10th Circuit in United States v. Johnson, 941 F.2d 1102 (10th Cir. 1991).

The Eighth Circuit has gone ahead and held that the possible loss is the measure, United States v. Johnson, 908 F.2d 396 (8th Cir. 1990); the Fourth Circuit held that the value of the collateral must be considered in valuing the loss, United States v. Rothberg, 954 F.2d 217 (4th Cir. 1992); United States v. Baum, 974 F.2d 496 (4th Cir. 1992).

The Third Circuit has confined loss to the actual loss suffered unless there was a greater probable or intended loss. United States v. Kopp, 951 F.2d 521 (3d Cir. 1991).

It appears, however, that the Sentencing Guidelines themselves reject the absolutism attendant the decisions in Brach and Johnson. Clearly the Commentary Note 7 states that actual or intended loss can be used to value the loss, whichever is higher. But the section goes on to state that there are additional factors in determining the loss.

41

Mr. Grober would argue that under these application notes, the Base Offense Level selected by the PIR is an overstatement and mischaracterization of the totality of the events.

## DEPARTURE ON THE BASIS OF COLLATERAL CONSEQUENCES

Mr. Grober has, and will, continue to suffer severe collateral consequences as a result of the instant conviction.   There is no indication in the Sentencing Guidelines Manual that the Sentencing Commission has adequately considered such circumstances. The Court can consider the collateral consequences of conviction.  *See, e.g.,* United States v. Koon, 518 U.S. 81 (1996).

The key collateral consequence that conviction will impose upon David Grober is the loss of employment opportunities.  The right to work is "the most precious liberty that a man possesses." Barsky v. Bd. of Regents, 347 U.S. 442, 447 (1954).  (Douglas, J., dissenting).  Most states and the federal government have laws and rules excluding individuals who have been convicted of a felony from employment in certain occupations and trades.  Conviction under a number of federal criminal statutes may result in the disqualification of a client from holding any office of honor, trust or profit under the United States.  Many states bar convicted felons from serving as a court appointed fiduciary.

42

**LEGAL ARGUMENT**

**POINT I**

**THIS COURT HAS THE AUTHORITY TO DEPART DOWNWARD ESPECIALLY IN THE INSTANCE WHERE THERE EXISTS A MITIGATING CIRCUMSTANCE OF A KIND OR TO A DEGREE NOT ADEQUATELY TAKEN INTO CONSIDERATION BY THE SENTENCING COMMISSION.**

## A. The Court's Sentencing Authority

As recently made clear by the Supreme Court's pivotal decisions in <u>United States</u> <u>v. Booker</u>, 125 S.Ct. 738 (2005) and <u>United States v. Fanfan</u>, 125 S.Ct. (2005), the mandatory nature of the Guidelines violated the Sixth Amendment.  In its remedy opinion, the Court severed 18 U.S.C. Section 3553(b)(1), which had rendered the Guidelines binding on federal sentences.  <u>Id</u>. at 764.  This left 18 U.S.C. Section 3553(a) in effect, which states:

> The Court shall impose a sentence sufficient, but not Greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> > (1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2)  The need for the sentence imposed
> >
> > > (A)  To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

43

## B.  Authority of the District Court to Depart Downward

It is respectfully submitted that this Court has the authority and the flexibility to order a downward departure based on the special circumstances that exist in this case. In <u>Koon v. United States</u>, 518 U.S. 81. 108-09 (1996), the Supreme Court of the United States concluded that any potential basis for departure not specifically prohibited by the Sentencing Guidelines may be considered by a sentencing court.

Title 18 U.S.C. 3553(b) provides the statutory authority for the sentencing court to depart from the Guideline Sentence range either upward or downward. In the case of Mr. Ramirez, it is appropriate for this Court to depart downward from the existing guideline range.  The statute provides that a sentencing Court shall impose a sentence within the appropriate guidelines range unless the court finds that there exists a mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in the formulation of the Guidelines, that should result in a sentence different than the one described.

The legislative history talks of a factor or a circumstance either not included or is unusual or extreme in the form that it exists in the present case. <u>See e.g.</u> 133 Cong. Rec. § 16647, § 16648 (daily ed. Nov. 20, 1987)(remarks of Sens. Biden & Kennedy). Likewise, the House Report's section by section analysis stated that, "the court looks to whether the circumstances in the case differ in kind or degree from the circumstances as accounted for by the Guidelines.  The term 'of a kind, or to a degree' . . . indicates that the Court should look to the manner and extent of the difference, and simply

clarifies and is consistent with the intent of the Sentencing Reform Act." 133 Cong. Rec. H 10017 (daily ed. Nov. 16, 1987).

The Commission's policy statement at Chapter 1 Part A4(b) states that the Guidelines are designed to carve out a "heartland" of typical offenses. The Commission admits that where a court finds that a case is atypical, the Commission (with a few stated exceptions) does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the Guidelines, which could constitute grounds for departure.

It is respectfully requested that this Court consider departure from the Sentencing Guidelines computation on the basis of the language of Title 18 U.S.C. 3553(a) which requires that a court impose a sentence "sufficient, but not greater than necessary to comply with the purposes" of sentencing. Those purposes have been defined by the statute, Title 18 U.S.C. 3553(a)(2) as just punishment, deterrence, protection of the public and rehabilitation. It has been held that this portion of the Sentencing Reform Act provides for departing from the Guidelines when the Court finds that the purposes of sentencing are not being served. See United States v. Concepcion, 795 F.Supp. 1262 (E.D.N.Y. 1992).

The primary goal of sentencing under the Guidelines is to punish this defendant and to deter the conduct of the type that is represented by the conviction of the Defendant David Grober. However, by statute, this is not the only purpose. Among the other purposes attendant in this sentence is the goal of insuring the surrounding

45

environment for rehabilitation of the Defendant David Grober.  The Court in <u>United States v. Concepcion</u>, stated as follows:

> there is a temptation to simply skirt these underlying concerns and entrust the task of punishment to the Federal Sentencing Guidelines. Alleviating the Court's sentencing burden is not however, the Guidelines' statutory function.

795 F. Supp. at 1271.

In <u>United States v. Concepcion</u>, looking at the issues of the Guideline application to a number of defendants who acted to cheat welfare by repetitive acts of fraud, the sentencing judge found that the Guidelines were not applicable:

> "Because they are based primarily on statistical averages of sentences imposed in the past, the Guidelines are of limited help where the crime and those who participate in it present special issues not normally faced in other cases . . . Converting the sentencing process into a mechanical, unreflective aggregation of numbers is emphatically not what Congress or the Constitution requires of independent Article III judges  . . .The punishments set out in the Federal Sentencing Guidelines are  . . .  of minimal value in determining how to treat each individual defendant because among other reasons they view the punishment of these defendants almost entirely as a matter of imprisonment for periods determined by the dollar amount lost . . . This is because the Guidelines in seeking to achieve uniformity, rely on a narrow range of easily quantifiable data."

<u>Id.</u>

There are other relevant criteria, such as the Defendant David Grober's background and circumstances.  Title 18 U.S.C. § 3551 mandated that the Court sentence a defendant in order to achieve the general purposes of § 3553(a), to the extent that they are applicable in light of all the circumstances of the case.  Title 18

U.S.C. § 3551(a).  The statute entitled "Imposition of Sentence" 18 U.S.C. 3553(a)

reads:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider--
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > > (B) to afford adequate deterrence to criminal conduct;
> > > (C) to protect the public from further crimes of the defendant;  and
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence and the sentencing range established for—
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced;  or
> > > (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;  and
>
> (7) the need to provide restitution to any victims of the offense.

Id.

Title 18 U.S.C. § 3553(b) provides that the Court shall impose a sentence of the kind and within the range, referred to by the Guidelines, <u>unless the Court finds that there are aggravating or mitigating circumstances of the kind or to a degree, not adequately taken into consideration by the Commission</u>. (emphasis added).

The imposition of sentences and the behavior of the Sentencing Commission has caused a shift away from the full and complete statutory mandates concerning sentences into a rigid application of the Sentencing Guidelines:

> There has been a tendency among the federal courts to ignore sections 3551 and 3553(a) by moving directly to section 3553(b).  This short circuiting of the statutory scheme may be due to the natural tendency to focus exclusively on the Guidelines . . . It is however, the statute as enacted, not the views of the individuals, even those embodied in Congressional or Sentencing Commission reports, that we are interpreting.
>
> The Sentencing Commission itself has tended to lose sight of the fact that it operates as part of a specific statutory scheme.  As one of the drafters of the Guidelines' authorizing legislation has noted, the Commission has by and large failed to "aid the sentencing court in its consideration of the underlying purposes of sentencing [stated in the sentencing statutes] as a factor in the

imposition of a particular sentence." Kenneth R. Feinberg, The Federal Sentencing Guidelines and the Underlying Purposes of Sentencing, 3 Fed. Sent. Rep. 326, 327 (1991); see also, Daniel J. Freed, Federal Sentencing, supra, 101 Yale L.J. at 1708-09. The lack of appropriate Commission guidance only increases the need for the sentencing court to heed the "carefully modulated tones" in the statutes and legislative history.

795 F.Supp. at 1262.

The Sentencing Reform Act §§ 3551 and 3553(a) of Title 18 U.S.C. direct the trial judge to consider many explicitly articulated factors, only two of which directly implicate the work of the Sentencing Commission. The remaining factors are developed by and incorporated into the Act by the enacting legislature itself and they are obviously entitled to no less weight than those developed under the "aegis" of the Sentencing Commission. The plain language of §§ 3551 and 3553(a) lists seven factors without ordering them in any hierarchy.

The first step of the inquiry is, "under Sections 3551 and 3553(a), the court must consider how, given the circumstances of the case, the various purposes of sentencing can best be served. It is aided in this inquiry by considering whether any or all of the seven factors listed in 3553(a) are applicable and what their relative weight should be." 795 F. Supp. at 1279. Considerations of the court include whether the Guidelines and Policy Statements should control a given case to the exclusion of other factors, relying on the Guidelines when the same is typical of "many like situations and is susceptible to the statistical analysis and compilation techniques used by the Commission in the development of the Sentencing Guidelines." Id. If the conclusion is that the Sentencing Guidelines apply, then the Court proceeds to the second step to follow the directive of §

3553(b). The Court's third step is to consider sentencing options recognized by statute or that the Sentencing Guidelines themselves apply.

The analysis in <u>United States v. Merritt,</u> 988 F.2d 1298 (2d Cir. 1993) directs the District Courts to exercise their departure power with "sensible flexibility." <u>United States v. Taylor,</u> 843 F.Supp. 38, 43(D.Ct. Pa. 1993). The District Courts ought properly use their sound judgment in crafting departures rather than rigid adherence to a table of numbers. <u>See e.g.,</u> <u>United States v. Bierley,</u> 922 F.2d 1061, 1068 (3d Cir. 1990); <u>United States v. Correa-Vargas,</u> 860 F.2d 35,40 (2d Cir. 1988); <u>United States v. Lara,</u> 905 F.2d 599, 604 (2d Cir. 1990).

In <u>Merritt,</u> the United States Court of Appeals for the Second Circuit stated that the exercise of the departure power is an essential ingredient in the sentencing system. <u>Id.</u> at 1306. While <u>Merritt</u> upheld an upward departure, it expressly spoke against any narrow view of departure power. The Court further held that the Act that set up the Sentencing Commission emphasized the import of the defendant's character. <u>Id.</u> The Court then concludes that, contrary to widely held belief, the Sentencing Reform Act did not abolish consideration of the character of the defendant in sentencing. <u>Id.</u> at 1307. The characteristics of the Defendant are to be a central consideration in the fashioning of a just sentence. <u>Id.</u> Any disparities resulting from important character differences are not only warranted, but also clearly envisioned by the provisions of the Act. <u>See</u> 28 U.S.C. 991(b)(1)(B). The fact that characteristics are not ordinarily considered does not necessarily preclude their consideration as never relevant. Had the Commission sought to introduce an absolute rule it would have done so explicitly. A downward departure is

appropriate based on a characteristic that is not ordinarily relevant where the consequences of that characteristic are detectable to an extreme outside the "heartland" of cases.

Certainly the reports and anticipated testimony of the three mental health professionals shower enough information upon this Court to push this matter far beyond the "heartland" of cases.

## POINT II

## DAVID GROBER IS ENTITLED TO DOWNWARD DEPARTURE BASED ON EXTRAORDINARY POST-OFFENSE REHABILITATION.

A number of Circuits, including the United States Court of Appeals for the Second and Third Circuits, have recognized that post-offense rehabilitation may serve as a basis for downward departure. See, United States v. Core, 125 F.3d 73 (2d Cir. 1997); United States v. Sally, 116 F.3d 76, 79 (3d Cir. 1997); United States v. Kapitzke, 130 F.3d 820 (8th Cir. 1997).

In United States v. Sally, the Third Circuit rejected the Defendant's argument that his age justified a downward departure. However, on its own initiative, the Court requested that the parties address "whether post-conviction rehabilitation is an appropriate basis for downward departure." Id.

After recognizing that there is "no reason to distinguish between post-offense and post-conviction rehabilitation efforts," the Court adopted the holding in United States v. Brock, 108 F.3d 31 (4th Cir. 1997), which concluded that:

> Post offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of the responsibility guideline was intended to apply.

116 F.3d at 80.

While the Court expressed its reluctance to define specifically what constitutes rehabilitation so extraordinary as to justify a downward departure, it noted that:

> [w]e do believe that, at a minimum, there must b
> evidence demonstrating that a defendant made *concrete
> gains toward "turning his life around"* before a sentencing
> court may properly rely upon extraordinary post-
> conviction rehabilitation efforts as a basis for a downward
> departure.  Unlike the usual adjustment for acceptance of
> responsibility where defendants may all-too-often be
> tempted to feign remorse for their crimes and be
> rewarded for it, we view the opportunity for downward
> departures based on extraordinary or exceptional post-
> conviction rehabilitation efforts as a chance for *truly
> repentant defendants* to earn reductions in their sentence
> based on a *demonstrated commitment to repair and
> rebuild their lives*.

Id. at 81 (emphasis added).

On remand, the United States Court of Appeals for the Third Circuit directed the

District Court to:

> determine whether [the defendant's] post-conviction
> rehabilitation efforts are remarkable and indicate real,
> positive behavioral change.  In reaching this decision, the
> district court should set forth specific findings concerning
> what post-conviction rehabilitation efforts Sally has made
> that demonstrate a degree of acceptance of responsibility
> expressed by post-offense rehabilitation that is
> substantially in excess of that ordinarily present.

Id.

This case consists of factual situations remarkably similar and accordingly this

court ought properly allow a downward departure based on the Defendant David

Grober's extraordinary rehabilitation.  The Defendant David Grober has "demonstrated"

a laudable "commitment to repair and rebuild" his life.  He has solidly established

himself as a highly respected and successful member of the community.

The above evidences the Defendant David Grober's devoted attention toward "turning his life around." It is hard to imagine a more productive course of atonement and rehabilitation. Mr. Grober cares for his family and dutifully and diligently works for a better community. Accordingly, it is respectfully submitted that David Grober ought properly be afforded a downward departure from the Sentencing Guidelines due to his extraordinary rehabilitation efforts since the date of the offense and certainly since the date of his guilty plea.

## POINT III

## DAVID GROBER IS ENTITLED TO DOWNWARD DEPARTURE ON THE BASIS OF CHARACTER.

The Sentencing Commission has stated that:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct **or the likelihood that the defendant will commit other crimes,** the court may consider imposing a sentence departing from the otherwise applicable guideline range.

U.S.S.G. § 4a1.3 (Policy Statement)(emphasis added).

A sentencing court may still consider the Defendant's character. Merritt, 988 F.2d at 1306.  The Sentencing Reform Act clearly ordered that the characteristics of the defendant were to be a central consideration in the fashioning of a just sentence. Further, the Sentencing Guidelines only sought to eliminate "unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6).  Disparities resulting from important character differences are not only warranted but are clearly envisioned by the Act. 988 F.2d at 1307.  The Sentencing Guidelines make no mention of personal characteristics.  Id. at 1308.  Further, 18 U.S.C. § 3661 provides that no limitation shall be placed on the information concerning background, character and conduct of a person convicted of an offense as to what the Court may receive and consider for the purpose of imposing an appropriate sentence.  The conclusion of the Merritt Court applies in the case at bar:

> [t]he absence of Guideline commands for defendant characteristics represents the Commission's wise judgment that it is far more difficult to quantify the effect that such characteristics should have on individual sentences, than it is to prescribe relative values to a variety of offenses.  The Commission thus decided (1) that only in circumstances that

55

> are other than "ordinary" should such values affect the sentence, but (2) that in such cases, the degree of impact on the sentence should be governed by reasonable discretionary departure rather than by prescribed imperative Guidelines calculations.

In recognizing the use of the downward departure procedure for defendants that would "stay out of the world of crime," the United States Court of Appeals for the Eleventh Circuit noted that "the question of what punishment is appropriate in a specific case is directly related to the likelihood that the particular offender will commit future crimes . . . the Sentencing Commission has stated that 'there may be cases where the court concludes that a defendant's criminal history or <u>the likelihood that the defendant will commit further crimes</u>. . . and therefore [should] consider a downward departure from the guidelines." <u>United States v. Collins</u>, 915 F.2d 618, 621 (11th 1990)(emphasis in original).

The issue of character has been and continues to be the overriding question for this Court and its consideration of sentence upon the Defendant David Grober. Will there be a recurrence? Does looking mean touching? All of these inquiries have been met head on. The undisputed conclusion is that the Defendant David Grober will never re-offend.

## POINT IV

## DAVID GROBER IS ENTITLED TO DOWNWARD DEPARTURE ON THE BASIS THAT THE CRIME ALLEGED CONSTITUTES ABERRANT BEHAVIOR.

While this departure is often used in order that the Defendant may receive probation, despite the "usual" departure basis, the Defendant David Grober respectfully suggests that such a departure basis exists in this case to justify this Court in departing downward from the Sentencing Guidelines as this activity at best constitutes a single act of aberrant behavior. While this departure is often used in order that the defendant may receive probation, it is impossible to be used in that manner in the case at bar, due to the mandatory nature of the sentence required by the conviction.

The Sentencing Commission concedes, in the text of the Guidelines, that it has not considered "single acts of aberrant behavior" for purposes of departure to a sentence of probation. There is nothing in the Guidelines, commentaries or application notes to suggest that the Sentencing Commission has considered the issue of aberrant behavior in the context of a guilty verdict for acts arising out of a fraud, as appears to be the case herein.

The best explanation of the reasoning behind departing downward on the basis of aberrant behavior is contained in United States v. Takai, 941 F.2d 738 (9th Cir. 1991). In considering a series of bribes made to an INS agent for the obtaining of "green cards," the Takai Court qualified the departure, noting that it was not based upon the notion that the Defendant has committed only one act, i.e., a "first offense" concept. On the contrary, the Takai court held that there was an aberrant behavior spectrum.

Specifically not included in the spectrum of aberrant behavior are the actions of a defendant who engaged in a check kiting scheme over a period of *at least fifteen months*, which constituted hundreds of overt acts taking place over a prolonged period of time. This case is dissimilar to the check-kiting scheme. *See*, <u>United States v. Carey</u>, 895 F.2d 318 (7th Cir. 1990). This Defendant's position hereinabove then ought properly be viewed as an aberration. <u>United States v. Takai</u>, 941 F.2d at 743. A "single act" refers to the particular action that is criminal, even though an entire series of acts leads up to the commission of the crime itself. In <u>Takai</u>, the Court ruled that the conspiracy and the bribe offer were so related in time, that for the purposes of deciding whether they were aberrant, they constitute a single act. <u>Id</u>. at 743. Other courts have implicitly approved aberrant behavior as grounds for departure, citing <u>United States v. Dickey</u>, 924 F.2d 836, 838 (9th Cir. 1991); *See*, <u>United States v. Ritchey</u>, 949 F.2d 61 (2d Cir. 1991).

In the case of the Defendant David Grober, it is clear that the support of his friends and family paint a picture of a man for whom these acts leading to his conviction are aberrant in every sense of the word. It is a doctrine not of singularity as opposed to multiplicity, but rather it is a doctrine of weighing the man's life to see if this act is driven by something that is itself aberrant behavior. This Court, in its examination of the record of this case and in its assessment of the Defendant David Grober can find the bases for departure by finding that the acts in this case are aberrant behavior.

**POINT V**

**DAVID GROBER IS ENTITLED TO DOWNWARD
DEPARTURE BASED ON SUBSTANTIAL FAMILY TIES
AND RESPONSIBILITIES PURSUANT TO U.S.S.G.
SECTION 5H1.6**

The Defendant David Grober respectfully offers that a downward departure is warranted on the grounds that he has substantial family ties and responsibilities, pursuant to U.S.S.G. Section 5H1.6. Specifically, David Grober avers that he is the primary provider for his family. As such, he seeks to have to this Court award a downward departure from the otherwise applicable Sentencing Guideline range.

This Court has discretion to depart from the Guidelines imprisonment range. See, U.S. v. Dominguez, 296 F.3d 192, 195 (2002) ("It is well within a District Court's discretion to grant downward departures. Indeed, the only relief from the Guidelines' formulaic rigidity is the ability of the sentencing Court to take into account the circumstances particular to the case before it.") A sentencing Court may depart from the ranges established by the Sentencing Guidelines when the judge finds "an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." U.S. v. Gaskill, 991 F.2d 82, 84 (1993) (citing 18 U.S.C. Section 3553(b)).

As part of its general instructions to the Commission, Congress indicated that the Guidelines and policy statements in recommending a term of imprisonment, or its length, should reflect the general inappropriateness of considering certain personal characteristics, including family ties and responsibilities. Gaskill, 991 F.2d at 84 (citing

28 U.S.C. Section 994(e)). In response, the Commission promulgated a policy statement that reads in part: "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable Guideline range." Id. At 84-85 (citing U.S.S.G. Section 5H1.6).

Unlike the Sentencing Guidelines, policy statements are not subject to formal legislative review and do not have the same degree of authority as Sentencing. Id. At 85. However, Section 5H1.6 coupled with an expression of congressional concern in 28 U.S.C. Section 994(e), gives the policy statement added legitimacy. Id. The "not ordinarily relevant" language of Section 5H1.6 suggests that in extreme circumstances departure based on family ties and responsibilities is permissible. U.S. v. Headley, 923 F.2d 1079, 1082 (1991) (See Gaskill, 991 F.2d at 85 ("In our opinions, we have concluded that Section 5H1.6 does not prohibit departures, but restricts them to cases where the circumstances are extraordinary.") Whether a particular case is appropriate for downward departure is a question of its "lying outside the heartland," that is, outside the ordinary. Dominguez, 296 F.3d at 195. Consequently, although the ordinary impact of a sentence on family members will not support a downward departure, where the impact is unusual or extraordinary, the District Court has discretion. Id.

The decision to reduce a defendant's sentence based upon family circumstances turns on the particular facts of each case. Dominguez, 296 F.3d at 197.

Here, David Grober is the primary provider of his family.   He respectfully submits that his family ties and responsibilities are extraordinary enough to warrant a downward departure, pursuant to Section 5H1.6.

David Grober's sister-in-law, Audrey Meyerson, is debilitated due to crippling rheumatoid arthritis.  The Defendant's support and assistance to her is an integral and critical component in her ability to function on a daily basis.  There is also no readily replaceable family member or other individual to assume the role and make the daily contributions now made by the Defendant David Grober for his sister-in-law Audrey Meyerson.  Her official residence is at the Defendant David Grober's home.  In fact she has tried to stay with a friend, but that has not been successful, with the Defendant David Grober having to rescue and return her to home on any number of occasions.

Our Circuit has long been at the forefront in encouraging district judges "not to shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." United States v. Gaskill, 991 F.2d 82, 96 (3d Cir. 1993) (citing United States v. Leiberman, 971 F 2d 981, 999, n.10 (3dCir. 1992)).  Later in Koon v. United States, 518 U.S. 81 (1996), the United States Supreme Court itself warned against a rigid formulaic application of the guidelines, holding that district courts have the discretion to depart downward in light of the circumstances particular to the case before it.  As stated by the Supreme Court in Koon:

> It has been uniform and constant in
> the federal judicial tradition for the sentencing
> judge to consider every convicted person as an
> individual and every case as a unique study in
> the human failing that sometimes mitigate,
> sometimes magnify, the crime and the
> punishment to ensue.  We do not understand it
> to have been the congressional purpose to
> withdraw all sentencing discretion form the
> United States District Judge.  Discretion is
> reserved within the Sentencing Guidelines.

Koon v. United States, supra 518 U.S. at 113.

The vitality of the District Court's discretion to grant downward departures based upon a particular defendant's unusual or extra-ordinary family circumstances has recently been re-established by our Circuit in United States v. Dominguez, 296 F.3d 192 (3d Cir. 2002).  Simply put, the sentencing court may grant a downward departure "whenever the family circumstances [of the defendant] lie outside the parameters of what is ordinary, [and] when that departure will not conflict with the purposes underlying sentencing." Id. At 193.  In United States v. Dominguez, supra, the Third Circuit restored necessary balance to the unduly harsh and restrictive interpretation incorrectly being attached to its earlier opinion in the United States v. Sweeting, 213 F.3d 95 (3d Cir. 2000), as to when a downward departure based upon family circumstances may be warranted in a given case.

As noted by the Third Circuit in United States v. Dominguez, "departures are an important part of the sentencing process because they offer the opportunity  to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves." Id. At 195, N.3 (quoting United States v. Gaskill, supra, 991 F.2d at 86.).  The United States

Supreme Court has approved of downward departure on the basis of family

circumstances if they are "present to an exceptional degree or in some other way made

[ ] the case different from the ordinary case where [family circumstances are] present."

United States v. Dominguez, supra, 296 F.3d at 194, n.5 (quoting Koon v. United

States, supra, 518 U.S. at 96).

Where, as here, the impact of a defendant's sentence on a relative is both

unusual and extra-ordinary, the District Court has discretion to depart downward.

Moreover, as explained in Dominguez, "[t]here is no requirement that the

circumstances be extra-ordinary by any particular degree of magnitude." Id. At 195.

Rather, "the circumstances of the case must simply place it outside the ordinary."

(Ibid). Where a particular case presents family related circumstances that "are not

"ordinary" or "generally present," the District Court may grant a downward departure.

Id. At 194 (quoting with approval, United States v. Gaskill, supra, 991 F.2d at 89).

Those family circumstances need not be "extra-extraordingary," "truly extra-ordinary"

or "so extra-ordinary" as the government has argued in the past. Id. At 195.  In

making its assessment, the District Court looks at the degree of the other family

member's special needs and the availability of readily replaceable substitute care

providers to the defendant's role and contributions in assisting and providing necessary

care to the distressed family member's needs. Id. At 197.

In Dominguez, the Third Circuit, in correcting any lingering misapprehension

from its decision in Sweeting, took pains to point out the stark distinctions between the

sentencing characteristics of the defendant in Sweeting versus those characteristics of

the defendant in <u>Dominguez</u>. In <u>Sweeting</u>, the defendant was a drug dealing recidivist who had a Criminal History Category VI despite her relatively young age and had previously been given second chances. <u>Id</u>. At 198, n.16 and 199, n.21. The defendant had engaged in the criminal business of drug distribution for profit and was found to have in her residence a semi-automatic pistol with loaded magazines. <u>Id</u>. At 199, n.20.

By contrast, the defendant in <u>Dominguez</u>, like the Defendant David Grober, was a first time offender, with no past criminal record, and did not profit from his criminal activity. Dominguez was younger (mid-forties) than David Grober, unmarried and without dependents. She, not unlike David Grober's role to his wife, however resided with and provided care, both physical and financial, to her two elderly parents. Dominguez's mother, although suffering from severe arthritis and heart problems, was nevertheless physically capable of, and did in fact, work to help support her husband and the household. <u>Id</u>. at 194.

The Third Circuit in <u>Dominguez</u> specifically rejected the argument of the government that because any period of incarceration necessarily deprives family members of a defendant's care for a period of time, any departure that includes a reduced period of incarceration is illogical and unwarranted under the policies underlying the extra-ordinary family circumstances exception. (<u>Id</u>. at 199-200, n.21) The Court refused to tie the hands of the District Court with an "all or nothing" choice where under the District Court must "either reduce the incarceration to zero, or decline to depart at all." (<u>Id</u>. at 200, n.21) The Court in <u>Dominguez</u> was quick to point out the simple truth, "that a shorter term is, of course, less damaging to [an] innocent

dependent family member [ ] than a longer one." (Ibid) See also United States v. Gaskill, supra, 991 F.2d at 86 (noting "[t]he degree of care required for the defendant's wife" and the "lack of close supervision by any family member other than defendant" in granting departure); [3] United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1999) (upholding departure where defendant lived with disabled father who depended on defendant to assist him moving in and out of wheelchair); United States v. Haversat, 22 F.3d 790, 797-98 (8th Cir. 1994) (defendant's care was irreplaceable element of treatment for mentally ill spouse); and, United States v. Sclamo, 997 F.2d 970, 972-74 (1st Cir. 1993) (defendant had special relationship with child with psychological and behavioral problems).

In this case, extraordinary family circumstances clearly exist and thus a downward departure is appropriate. The Defendant David Grober has long played a crucial and indispensable role in assisting his sister-in-law Audrey Meyerson. He performs the vast majority of the household tasks. He assists with handling the staircase and with taking medication, and provides palliative emotional support. He further assists her with certain physical tasks necessary for her daily needs.

---

[3] In Gaskill, the Third Circuit in pointing out that the District Court had "underestimated its power to "depart" and that the "record demonstrated[d] circumstances quite out of the ordinary" concluded:

> The degree of care required for the defendant's wife, lack of close
> Supervision of any family member other than the defendant, the
> Risk to the wife's well being, the relative brief. . . imprisonment
> Sentencing called for by the Guidelines computation, the lack of
> Any end to be served by imprisonment other than punishment, the
> Lack of any threat to the community-indeed, the benefit to wit by
> Allowing the defendant to care for his ailing wife-are all factors
> That warrant departure.

Id. at 86.

Without in any way minimizing the Defendant David Grober's criminal misconduct, David's prior lack of any criminal or other misconduct, his substantial period of post-offense rehabilitation treatment since December 2005 and his sister-in-law's dependence upon him to keep her life in check as suggested in <u>Dominguez</u> and <u>Gaskill</u>, the "lack of any end to be served by imprisonment other than punishment, [and] lack of any threat to the community – indeed the benefit to it by allowing the defendant to care for his ailing wife."

Like the defendant in <u>Dominguez</u>, the Defendant David Grober has been severely restricted in every possible way, restricted from the use of computers and internet access and has demonstrated throughout that he poses no real threat to society. The Defendant David Grober has hurt, financially damaged, and humiliated himself and his loyal and innocent family - all for no personal or economic gain. The punishment he has already experienced, and will continue to incur, has had and will continue to have a significant deterrent effect. He is genuinely contrite, has undergone and continues to receive mental health counseling and treatment. He has rebuilt his marriage and is starting to rebuild his ability to be a financial provider to the household and to address the emotional and actual indebtedness on their household. Incarceration, now, will serve no genuine purpose.

## CONCLUSION

And my ending is despair,

Unless I be relieved by a prayer,

Which pierces so that it assaults

Mercy itself and frees all faults.

As you from crimes would pardon'd be,

Let your indulgence set me free.

Shakespeare, The Tempest.

Justice Marvin Frankel wrote that "[t]he course of justice must be sought with such objective rationality as we can muster tempered with mercy, but obedient to the law, which, we do well to remember, is all that empowers a judge to make other people suffer." United States v. Bergman, 416 F.Supp. 496, 503 (S.D.N.Y. 1976).  It is ironic that some of the most important words of balance on the issue of sentencing are written by former District Judge Marvin Frankel, who fathered the genesis of the Sentencing Guidelines (but is not responsible from the present day incarnation of them).  In examining the Sentencing Guidelines, former Judge Frankel has written that application of the Guidelines should be more generously measured. Frankel, Marvin E., Sentencing Guidelines: A Need for Creative Collaboration, 101 Yale L.J. 2043, 2050-51(1992).  Daniel Freed, another respected commentator on the Sentencing Guidelines, has written that departures are an essential and respected part of the system that Congress established, rather than evidence of non-compliance.  Freed, Daniel J.,

Federal Sentencing in the Wake of the Guidelines: Unacceptable Limitations on the Discretion of Sentences, 101 Yale L.J. 1681, 1739 (1992).

It is ironic that some of the most important words of balance on the issue of sentencing are those of former District Judge Marvin Frankel, who fathered the idea of Sentencing Guidelines, but is not in any way responsible for the monstrosity that has emerged from the caldron of governance.  In examining the Sentencing Guidelines, former Judge Frankel has previously written that applying the ancient principles of lenience suggest that the power to depart below the guidelines should be more generously measured.  Frankel, Marvin E., **Sentencing Guidelines:  A Need for Creative Collaboration**, 101 Yale L. J. 2043, 2050-1.  (1992). Daniel J. Freed, another respected commentator has written that departures are an essential and respected part of the system that Congress established, rather than evidence of non-compliance.  Freed, Daniel J., **Federal Sentencing in the Wake of the Guidelines: Unacceptable Limitations on the Discretion of Sentences**, 101 Yale L. J. 1681, 1739 (1992).

We now ask that this Court impose a sentence that considers all of the circumstances, with the thought of this Defendant being able to proceed with his life in a lawful manner. A Guideline sentence may be obedient to the law, but in neither area does any one of these legal labyrinths temper anything with mercy.  In the face of the difficult Sentencing Guidelines numbers, it would be an act of mercy to temper those numbers.  Not as a private impulse, but as an act of faith in the man who stands before the Court, an offender who has lost a great deal, including his basic dignity.

Under <u>Booker</u> and <u>Crosby</u>, the Court is empowered to impose the sentence it sees fit. We therefore appeal to the Court's discretion and compassion to sentence Mr. Grober to probation. His conduct was wrongful and deserving of punishment. But his motives and his conduct – all factors largely ignored by the Sentencing Guidelines – may now be properly considered.

Accordingly, we respectfully submit that the totality of the circumstances commends a probationary sentence that says, in effect, that Defendant David Grober, has already been truly punished enough.

Respectfully submitted,

**LAW OFFICES OF BRIAN J. NEARY**

By: /s/ Brian J. Neary

Brian J. Neary
Co-counsel for the Defendant
David Grober

**LAW OFFICES OF PETER W. TILL**

By:

Peter W. Till
105 Morris Avenue, Suite 201
Springfield, New Jersey 07081
(973) 258-0064
(973) 258-0478 – Fax
tilllaw@aol.com
Co-Counsel for Defendant,
David Grober