

**U.S. Department of Justice**

United States Attorney
District of New Jersey

---

*Shana W. Chen*  970 Broad Street, Suite 700  (973) 645-2700
*Assistant United States Attorney*  Newark, NJ 07102  Direct (973) 353-6095

July 10, 2008

**VIA ECF and HAND DELIVERY**
Honorable Katharine S. Hayden
United States District Judge
U.S. Post Office & Courthouse
Federal Square, Room 311
Newark, NJ 07102

      Re: United States v. David Grober
          Crim. No. 06-880 (KSH)

Dear Judge Hayden:

      The United States is in receipt of the July 9, 2008 "Preliminary Statement of Professor Douglas A. Berman" (hereinafter "Berman statement," attached). This 10-paragraph document, which arrived only three business days before Professor Berman is scheduled to testify, fails to provide adequate disclosure to the United States of Professors Berman's expected testimony. Specifically, it fails to describe the witness' opinions or the bases and reasons for the opinions. Instead, it merely indicates the subject of the witness' testimony, including allusions to the fact that "[i]n my view, though no court has yet devised an ideal approach to these challenging cases, there are a number of concepts that have emerged in the caselaw that might aid the court in the exercise of its sentencing responsibilities in this case" and indicating that "I will provide a candid and complete description of what I consider to be the legally and factually problematic aspects of the extant sentencing guidelines for child pornography offenses when applied in basic downloading cases." Berman Statement, ¶ 10. It provides no indication of what the "concepts . . . that might aid the court in exercise of its sentencing responsibilities" are, nor what constitute the "legally and factually problematic aspects of the extant sentencing guidelines for child pornography." As a result, the United States does not have sufficient notice to prepare properly for Professor Berman's testimony, or to challenge fully its appropriateness in this proceeding.

      Given what the United States can discern from Professor Berman's statement, however, his intended topic is not properly the subject of expert testimony. Instead, Professor Berman apparently intends to testify on legal issues at the heart of the Court's expertise, specifically, how concepts in the case law should inform the Court's sentencing. These issues are disputed by the parties and are properly the subject of legal advocacy rather than expert opinion. Indeed, Professor Berman does not claim any particular expertise in the legislative history surrounding the adoption of the child pornography guidelines at issue in this case. Moreover, even if had he asserted such specialized knowledge, that information is derived through legal analysis of

publically available legislative history, and is appropriately presented, as with all legal advocacy, in briefing to the Court.  Such briefing, whether as co-counsel or amicus, would enable the United States to properly respond to the legal positions identified by Professor Berman, and would also enable the Court to engage in subsequent dialogue and questioning at oral argument.

      Finally, if Professor Berman proceeds to testify, the United States has not yet received any reverse Jencks material, and asks that it be provided immediately.  The United States asks that this material include identification of any cases in which he has previously appeared as an expert witness.

                            Respectfully,

                            CHRISTOPHER J. CHRISTIE
                            United States Attorney

                            /s/ Shana W. Chen

                            By: Shana W. Chen
                            Assistant U.S. Attorney

cc:    Peter Till, Esq. (via ECF and facsimile, 973.258.0478)
        Brian J. Neary (via ECF and facsimile, 201.488.0240, 201.420.8102)

Statement of Professor Douglas A. Berman<br>Dated:   July 9, 2008

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Criminal Case No. 06-880 (KSH)

**UNITED STATES**
    **v.**
**DAVID GROBER,**
        **Defendant.**

_____
**PRELIMINARY STATEMENT OF PROFESSOR DOUGLAS A. BERMAN**
_____

**I, Professor Douglas A. Berman** of the Ohio State University Moritz College of Law, 55 West 12th Avenue, Columbus, Ohio, make the following statement:

## INTRODUCTION

1. I am the William B. Saxbe Designated Professor of Law at the Moritz College of Law at The Ohio State University. My primary teaching and scholarship activities focus on American criminal law and policy, with sentencing decision-making as my particular area of special expertise. Among the courses I regularly teach are Criminal Law, Criminal Procedure, and Criminal Punishment and Sentencing. I have authored well over 50 major articles and commentaries on a variety of criminal law topics, and I am the creator and author of the widely-read and widely-cited web log, Sentencing Law and Policy. In addition, I serve as co-managing editor of two academic journals devoted to criminal law topics, the *Ohio State Journal of Criminal Law* and the *Federal Sentencing Reporter*. I also am the co-author of the leading casebook on criminal sentencing topics, *Sentencing Law and Policy: Cases, Statutes and Guidelines* (2d Ed. 2007). My scholarly writings and web log have been cited by the U.S. Supreme Court and by numerous lower federal and state courts. I am frequently consulted by national media concerning criminal law and sentencing developments, and I have been extensively quoted in articles appearing in nearly every major newspaper, including the *New York Times*, the *Washington Post*, the *Wall Street Journal*, and in pieces from the Associated Press and Reuters news services.

2. I often have served as a consultant to elected officials, members of sentencing commissions, judges and lawyers working on important or interesting sentencing issues and cases. I have testified before the U.S. House of Representatives, the U.S. Sentencing Commission, and numerous state sentencing commissions on a variety of

Statement of Professor Douglas A. Berman
Dated: July 9, 2008

federal and state sentencing topics. I have submitted written reports, briefs and letters to a number of federal circuit and federal district courts, sometimes in the role of a retained expert, sometimes in the role of an amicus. In a recent case involving sentencing procedures, the U.S. Court of Appeals for the Sixth Circuit solicited my involvement as court-appointed *amicus curiae* to submit my views through an appellate brief to be filed not in support of either party. *See United States v. Hamad*, 495 F.3d 241 (6th Cir. 2007). In addition, I recently served as co-counsel helping to represent the ruling and views of the Eleventh Circuit before the U.S. Supreme Court in *Irizarry v. United States*, 128 S. Ct. 2198 (2008). In both *Hamad* and *Irizarry*, the (non-partisan) position and ideas that I developed and presented to the courts carried the day and helped to clarify important federal sentencing doctrines.

3. Much of my scholarly research and consulting work has been focused on issues related to modern federal sentencing law and practice, and I have devoted particular attention to the role and responsibilities of the U.S. Sentencing Commission, federal courts and federal practitioners in the wake of the Supreme Court's landmark rulings in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005) and their progeny. I have already written more than a dozen articles and commentaries concerning the meaning, import and consequences of *Blakely*, *Booker* and the follow-up decisions of *Rita v. United States*, 127 S. Ct. 2456 (2007), *Gall v. United States*, 128 S. Ct. 586 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), for federal sentencing law and practice.

4. In May 2008, attorneys Brian Neary, Esq. and Peter W. Till, Esq., who represent David Grober in this action, asked me to review documents and related information concerning the prosecution and pending sentencing of their client on various federal criminal charges. I have reviewed numerous documents that have been submitted to this Court in preparation for sentencing. On the basis of my review, I feel qualified to testify as to a number of serious concerns I have about the calculation and application of the federal sentencing guidelines in a case of this nature.

## **A DISTRICT COURT'S MODERN SENTENCING RESPONSIBILITIES**

5. The Supreme Court has repeatedly explained and clarified that federal sentencing courts are now to be guided by all the provisions of 18 U.S.C. § 3553(a), which includes the critical "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 128 S. Ct. at 570. A district court may not give any presumptive weight to guideline determinations or calculations or policy statements; the sentencing court must make an "individualized assessment based on the facts presented" of the impact and import of all the § 3553(a) factors, *Gall*, 128 S. Ct. at 597, and must render a "reasoned sentencing judgment" after considering the parties'

Statement of Professor Douglas A. Berman
Dated:   July 9, 2008

arguments and exercising of its own independent "legal decisionmaking authority." *Rita*, 127 S. Ct. at 2465-70.  *Accord Kimbrough*, 128 S. Ct. at 569-74; *United States v. Hawes*, 523 F.3d 245, 256 (3d Cir. 2008).

6. The Supreme Court has emphasized that the advisory sentencing guidelines will not necessarily capture and reflect all § 3553(a)'s provisions and purposes, even in "a mine-run case." *Kimbrough*, 128 S. Ct. at 575.  Consequently, federal sentencing judges are now, in essence, statutorily obliged to consider arguments that certain advisory guidelines fail to reflect proper considerations of all the § 3553(a) purposes and policies or treat relevant defendant characteristics insufficiently or improperly. See *Rita* 127 S. Ct. at 2465-70; *id.* at 2473 (Stevens, J., concurring) (highlighting that the guidelines fail to set forth "any standards or recommendations that affect sentencing ranges for many individual characteristics … [which are] matters that § 3553(a) authorizes the sentencing judge to consider").   The Supreme Court has recently reinforced that judges may vary from the suggested sentencing ranges set out in the Guidelines "based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough*, 128 S. Ct. at 570, and it has suggested that the Sentencing Commission's studied analysis of its own guidelines and other independent research and reasoning are permissible and pertinent considerations for district courts at sentencing.  *Gall*, 128 S. Ct. at 590-96; *Kimbrough*, 128 S. Ct. at 569-74; *Rita* 127 S. Ct. at 2465.

7. The Supreme Court has suggested that the respect and weight reasonably given to a guideline may depend greatly on whether the Sentencing Commission developed that provision in "the exercise of its characteristic institutional role." *Kimbrough*, 128 S. Ct. at 575.  As the Supreme Court has explained, this "characteristic institutional role" of the Commission has two essential components: (1) reliance on empirical evidence of pre-guidelines sentencing practice, and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts.  *Rita*, 127 S. Ct. at 2464-65.  The Supreme Court has stressed that "not all of the Guidelines are tied to … empirical evidence." *Gall*, 128 S. Ct. at 594 n.2, which in turn suggests that sentencing courts have considerable authority, and perhaps even a general mandate, to explore various sources of "empirical data and national experience" in its efforts to craft a sentence in a particular case that will achieve the punishment purposes set forth by Congress in  18 U.S.C. § 3553(a)(2).

## **CHALLENGES IN CHILD PORNOGRAPHY DOWNLOADING CASES**

8. As evidenced by many recent rulings in circuit and district courts nationwide, the post-*Booker* sentencing obligations of federal courts are uniquely challenging in child pornography cases.  As highlighted by a recent article discussing the development and application of the current federal child pornography guidelines, a series of recent

3

changes to the child pornography guidelines are "not the product of an empirically demonstrated need for consistently tougher sentencing." Rather,

> these changes are largely the consequence of numerous morality earmarks, slipped into larger bills over the last fifteen years, often without notice, debate, or study of any kind. Congressionally mandated changes were even enacted to prevent the Commission from implementing carefully considered modifications which would have lowered applicable offense levels….
>
> [T]he child pornography guidelines, as applied to a particular defendant, are not based on sound research and reflective experience, and therefore fail to produce an appropriate sentence.

Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* at 1-2, *available at* http://www.fd.org/pdf_lib/Deconstructing%20the%20Child%20Pornography%20Guidelines%206.10.08.pdf (June 10, 2008) [Attached here as Exhibit A]. As one federal district court has recently explained, "much like the crack guideline criticized by the Supreme Court in *Kimbrough*, [the current federal child pornography guidelines are] not representative of the Commission's typical role or of empirical study" and operate to regularly suggests extreme sentencing ranges that are "far greater than necessary to protect the public and deter defendant[s] from re-offending." *United States v. Hanson*, No. 07-CR-330, 2008 U.S. Dist. LEXIS 47754, at *10-*18 (E. D. Wisc. June 20, 2008).

9. Because the current version of the federal sentencing guidelines for child pornography offenses do not effectively serve the 3553(a) purposes and are not supported by empirical data or sound research, district courts cannot readily or reasonably rely on the guidelines to structure their determination of a sentence that fulfils the Sentencing Reform Act's critical "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 128 S. Ct. at 570. And, as the paper by Mr. Stabenow documents, the guidelines for child pornography offenses are especially problematic for cases that involve the computer downloading of images that are already in public circulation and that do not involve any production or commercial distribution of child pornography: the guidelines incorporate and reflect severe sentence enhancements that clearly were intended to increase sentences for actual producers or mass commercial distributors of child pornography, but now can and will be applicable to individuals who merely download illegal images on their computers.

10. Poorly served by the extant sentencing guidelines for child pornography offenses, district and circuit courts around the country have struggled to develop fair and consistent standards for sentencing in child pornography downloading cases similar to the case at bar. In my view, though no court has yet devised an ideal approach to these challenging cases, there are a number of concepts that have emerged in the

caselaw that might aid the court in the exercise of its sentencing responsibilities in this case.  My testimony will not seek in any way to invade the province of the court in making its individualized sentencing determination concerning the particular sentence that will be "sufficient, but not greater than necessary to accomplish the goals of sentencing."  *Kimbrough*, 128 S. Ct. at 570.in this case.  Rather, in the hope of assisting the Court in the exercise of its sentencing responsibilities, I will provide a candid and complete description of what I consider to be the legally and factually problematic aspects of the extant sentencing guidelines for child pornography offenses when applied in basic downloading cases.